ARTHUR F. THURNAUER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54283.  Promulgated June 26, 1934.

*Harry J. Leffert, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

Seawell: Petitioner in his brief says: "The payments made by petitioner were solely in satisfaction of his obligations to his partners as created by the partnership agreements and not in the acquisition

of any asset, and therefore, constituted a deduction against his partnership earnings." We were not told by what section of the taxing act such a deduction from gross income is directed to be allowed, or how the payment of money " not in acquisition of any asset " is *necessarily deductible*. Section 214 of the Revenue Act of 1926, applicable here, contains no such direction and affords no explanation of petitioner's claim. Petitioner further says in his brief that " payments when made by any of the partners to the others based upon the artificially established criterion (the difference between the sum of $80,000 on the one hand, and the last official sales price of a Stock Exchange membership on the other hand) were in adjustment of the individual profit and loss accounts of the various partners in that specific transaction." We do not understand the transaction referred to between the several partners to have been in any sense artificial or unrelated to the business in hand. The partnership was built up around the membership in the exchange, and without such membership there was to be no partnership. Petitioner, as the individual holding the membership in the exchange, was the key man and indispensable to the brokerage business to be set up. He was not to pay into the establishment of the business as much money as Wertheim, and possibly was not to contribute as much to its capital as Kay, when the contribution of the good will of Kay's former business is considered. Petitioner, however, was to have as large a share in the profits as any other. The contributions to the capital account by Kay and Wertheim were in a measure static—cash, the amount of which could be returned in kind—while that of petitioner was more subject to fluctuations of value. The hazard of his contribution ought not to be borne by petitioner alone while that of his partners was comparatively secure; and so it was provided in the contract of partnership that losses on the investment in the exchange seat should be borne proportionately by the partners, and also that the rise in the price of such membership should be profit to the three. To ascertain this loss or gain upon the cost of the exchange membership, it was provided that the cost to petitioner should be the base and the last officially announced purchase price of a membership in the New York Stock Exchange should measure the profit or loss. These data are all furnished in the stipulation of facts and show plainly that the rise in value of the exchange membership, measured as required by the contract, resulted in a profit of $221,000. Thirty-five percent of this gain amounts to $77,350, the exact amount paid in 1927 by petitioner to Kay, as he says in the brief above quoted, " in adjustment of the individual profit " of Kay in the " specific transaction." Likewise, in the succeeding year petitioner paid the other partner

$51,300 in "adjustment" of his share in the profit of the same transaction.

What petitioner paid was not to buy his peace or settle any controversy as to his title to his exchange membership. There was no peace threatened or title disputed. The cases of *A. King Aitkin*, 12 B.T.A. 692, and *Kornhauser* v. *United States*, 276 U.S. 145, and other cases cited by petitioner are, therefore, not in point. It matters not that the seat on the exchange was held in petitioner's name and so evidenced in the records of the exchange. The other partners in the brokerage firm had an equitable and legal claim to share in the rise of its value, just as, for instance, if it had been a patent right or other property of the petitioner brought into the contract of partnership.

The rise in value of the exchange membership was not gain taxable to petitioner at that time, because it had not been sold or otherwise disposed of by him. We do not understand that it was so dealt with in petitioner's returns. The stipulation of facts, as we read it, negatives the suggestion. The issue is the claimed deduction, not the amount of gross income. To entitle the petitioner to any deduction, he must bring himself within the provisions of the statute allowing deductions. Sec. 214, Revenue Act of 1926; sec. 23, Revenue Act of 1928.

The parties had the right to contract among themselves as to how their respective interests in the partnership assets should be ascertained. What the petitioner paid to his partners was never his own under the contract, but belonged to them as their part in the partnership assets as the value of the seat on the exchange increased. These payments are not deductible items. Cf. *Arthur C. Hilmer*, 27 B.T.A. 1165.

Petitioner cannot hold to the fruits of the partnership contract and refuse to pay his partners their part of the profits ascertained in the way agreed upon between them; or claim such payment when made to be a deductible loss suffered and not compensated for by insurance, or a bad debt ascertained to be worthless and charged off, or an ordinary and necessary expense of his business. It was none of these things.

Under the stipulated facts we must sustain the respondent and hold that there was no overassessment against petitioner in the year 1927 as claimed by him and that the respondent was not in error in refusing the deductions claimed.

*Judgment will be entered for the respondent, except that as to the year 1927 the deficiency is $67.44 instead of $68.44, as stated in the deficiency notice.*